UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| JOHN ANDERSON, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 7:22-CV-68-REW-CJS |
| | ) | |
| 3M COMPANY, *et al.*, | ) | |
| | ) | OPINION & ORDER |
| Defendants. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

I. **BACKGROUND**

Plaintiffs in this case "worked as coal miners within the Commonwealth of Kentucky" and allege that they were "exposed to coal, rock or sand dust as a result of such coal mine employment." DE 1-2 at 51–52. Plaintiffs claim that they wore respirators manufactured or distributed by Defendants ("Respirators") and, as a result of the failure of the Respirators, now suffer from "Coal Workers' Pneumoconiosis," also referred to as "Black Lung." *See id.* at 52. Defendants in this case are split into two categories: Manufacturer Defendants[1] and Supplier Defendants.[2] Manufacturer Defendants manufactured the various Respirators. *See id.* at 50. Supplier Defendants then sold the Respirators to Plaintiffs' employers for Plaintiffs' use while they were working coal mining jobs. *See id.* at 51, 61–62 (¶¶ 44, 45, 48). Plaintiffs bring negligence, strict liability, intentional misrepresentation, and breach of warranty claims against Manufacturer Defendants, *see id.* at 53–

---

[1] 3M Company; Mine Safety Appliances Company, LLC; and American Optical Corporation.
[2] Mine Service Company, Inc. and Kentucky Mine Supply Company.

1

59, and Plaintiffs bring negligence and strict liability claims against Supplier Defendants, *see id.* at 59–62.

On July 15, 2022, only two months out from trial (for one named plaintiff but not all joined plaintiffs), 3M removed this case from Pike Circuit Court, claiming diversity jurisdiction under § 1332 on grounds that the Kentucky Supplier Defendants were fraudulently joined to the action. DE 1 (Notice of Removal) at 8. Plaintiffs moved to remand the case to state court. DE 17 (Motion to Remand). 3M filed a response, DE 19, and Plaintiffs filed a reply, DE 20. The matter is ripe for review.

II.     ANALYSIS

Absent a federal question, a party invoking the Court's removal jurisdiction must demonstrate complete diversity of citizenship at the time of removal; that is, all plaintiffs must be diverse from all defendants. 28 U.S.C. § 1332(a)(1); *id.* § 1441(a); *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999). The Court must resolve all doubts about the propriety of removal in favor of remand and strictly construe the removal statutes. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549–50 (6th Cir. 2006); *Coyne*, 183 F.3d at 493. When joinder of a non-diverse party destroys complete diversity, "the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined." *Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999).

Plaintiffs sued two Kentucky Defendants. *See* DE 1-2 at 50. That joinder nominally defeats complete diversity. 3M, which waited years to make the argument, alleges that the two Kentucky Defendants—Kentucky Mine Supply Company and Mine Service Company, both Supplier Defendants—were fraudulently joined to this action to destroy subject matter jurisdiction based on diversity of citizenship. *See* DE 1 (3M's Notice of Removal) at 10–18; DE 19 (3M's Response)

at 4–13. To support its argument, 3M points to Plaintiffs' failure to engage in discovery with or "develop a case against the Supplier Defendants." *See* DE 1 at 13. 3M also claims that Plaintiffs' fraudulent joinder of Supplier Defendants here is part of a broader pattern and practice. *See id.* at 16. Plaintiffs argue that 3M fails to cite undisputed facts in the record to negate their colorable claim; Plaintiffs reject the fraudulent joinder depiction. *See* DE 17 (Motion to Remand) at 10–16. Further, Plaintiffs reject the argument that either failure to engage in discovery or a litigation strategy pursued in another case is evidence of fraudulent joinder. *See id.* at 13–16.

A removing party faces a heavy burden in attempting to demonstrate fraudulent joinder. *Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.*, 512 F. App'x 485, 489–90 (6th Cir. 2013). Joinder of a non-diverse defendant is fraudulent only if it is "clear that there can be no recovery [against that defendant] under the law of the state on the cause alleged or on the facts in view of the law." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994). In other words, the removing party must show that there is no "colorable basis for predicting that a plaintiff may recover against [that defendant]." *Coyne*, 183 F.3d at 493. "If the plaintiff has even a 'glimmer of hope,' then any charge of fraudulent joinder fails, and the Court must remand the case to state court for want of subject matter jurisdiction." *Christensen v. ATS, Inc.*, 24 F. Supp. 3d 610, 613 (E.D. Ky. 2014) (internal citation omitted); *see also Hartley v. CSX Transp.*, 187 F.3d 422, 426 (4th Cir. 1999) ("Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends."). Further, "[t]he non-moving party's motive for joining the non-diverse party to the lawsuit is 'immaterial to our determination regarding fraudulent joinder.'" *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 951 (6th Cir. 2011) (citing *Jerome-Duncan*, 176 F.3d at 907).

In assessing whether joinder was fraudulent, the Court employs "a test similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss." *Casias v. Wal-Mart*

3

*Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012). As with a 12(b)(6) motion, the Court "must resolve 'all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non[-]removing party.'" *Coyne*, 183 F.3d at 493 (quoting *Alexander*, 13 F.3d at 949). In evaluating fraudulent joinder, the Court can pierce the pleadings and consider the sort of evidence it would at summary judgment but solely "for the limited purpose of determining whether there are undisputed facts that negate the [plaintiffs'] claim[s]." *Casias*, 694 F.3d at 433 (internal quotation marks omitted).

The law of the forum state "provides the substantive law governing diversity cases." *K&T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 176 (6th Cir. 1996) (citing *Erie R.R. Co. v. Thompson*, 58 S. Ct. 817 (1938)). Therefore, in this case, the Court will apply Kentucky substantive law. The Kentucky Middleman Statute provides that, in a products liability case, distributors are generally shielded from liability when they sell a product in its "original manufactured condition or package" so long as the manufacturer is identified and subject to the court's jurisdiction. KY. REV. STAT. § 411.340. The exception to this rule is when the distributor "knew or should have known at the time of distribution or sale of such product that the product was in a defective condition, unreasonably dangerous to the user or consumer." *Id.* If a distributor falls within this exception, the statutory immunity vanishes. *See id*. The burden of showing the predicate, by a preponderance of the evidence, is on the distributor. *See id.* Showing the exception falls on the claimant. *See Weixler v. Paris Co.*, No. 302-CV-390-H, 2003 WL 105503, at *1 (W.D. Ky. Jan. 2, 2003); *see also Flint v. Target Corp.*, No. 3:07-CV-600-R, 2009 WL 87469, at *3–4 (W.D. Ky. Jan. 13, 2009), *aff'd*, 362 F. App'x 446 (6th Cir. 2010).

Plaintiffs' Complaint expressly alleges that each Supplier Defendant "knew or should have known at the time of sale that the dust mask/[R]espirators it sold were defective and unreasonably

4

dangerous when used in a coal mine." *See* DE 1-2 at 59. As preliminary proof for this contention, Plaintiffs referenced, in the Complaint itself, numerous scientific, industry, and governmental publications that were available to Supplier Defendants to inform them that at least some of the Respirators would lose effectiveness in certain applications and/or would leak from ill fit. *See id.* at 60–61. Notice of such product characteristics or risks could, therefore, be notice of a defective condition. Further, the Complaint specifically alleges (¶¶ 6, 12, 13) that Supplier Defendants sold Respirators to Plaintiffs or Plaintiffs' coal mining employers for employees' use. *See id.* at 61; *see also id.* at 59.

To defeat a fraudulent joinder claim, Plaintiffs need not show that they will prevail against Supplier Defendants at trial; instead, they need only show that they have a "colorable basis" for recovery. *See Coyne*, 183 F.3d at 493. They have met that low bar in this case. Given that the Kentucky Middleman Statute does not absolve distributors and suppliers from liability when they know or should have known of a product's defect, and given the allegations in the Complaint, it is far from "clear that there can be no recovery" against Supplier Defendants. *See Alexander*, 13 F.3d at 949. Kentucky law generally holds product sellers liable for putting a defective product in the stream of commerce, resulting in injury. *See Thacker v. Ethicon, Inc.*, 47 F. 4th 451, 459 (6th Cir. 2022); KY. REV. STAT. § 411.340. A middleman meeting his burden on non-alteration may get immunity (assuming manufacturer amenability to suit), but a middleman on actual or constructive notice of a defect enjoys no such protection.

3M's argument that Supplier Defendants were fraudulently joined because Plaintiffs have not built or displayed a case against Defendants fails. "[I]n determining whether a defendant has been fraudulently joined, a district court's task is limited to determining 'whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved.'"

5

*Adams v. Minn. Mining & Mfg. Co.*, 4:03-CV-182, 4:04-CV-2, 2004 WL 718917, at *3 (W.D. Ky. March 30, 2004) (quoting *Alexander*, 13 F.3d at 949). "The question is not whether the [P]laintiffs will recover from [Defendants]" but rather "whether the [P]laintiffs could recover from [Defendants] under Kentucky law." *Winburn v. Liberty Mut. Ins. Co.*, 933 F. Supp. 664, 666 (E.D. Ky. 1996). While courts are permitted to pierce the pleadings, the exercise does not replicate summary judgment or even reach the demands of a Rule 12 screening; piercing is for the limited purpose of considering "undisputed facts that negate the claim" and "is not intended to provide an opportunity to test the sufficiency of the factual support for a plaintiff's claim, as is done in a Rule 56 motion." *Walker*, 443 F. App'x at 956.

While 3M discusses in great detail Plaintiffs' failure to engage in discovery, it does not cite any undisputed facts negating Plaintiffs' claim that Supplier Defendants were involved in distribution of the targeted masks and knew or should have known about the Respirators' alleged defects. *Cf. Badon v. R J R Nabisco Inc.*, 224 F.3d 382, 393 (5th Cir. 2000) (finding fraudulent joinder where non-diverse defendants produced affidavits that "completely negate[d]" the plaintiffs' claims). The Kentucky Defendants concede they dealt in the Manufacturer Defendants' products. *See* DE 1-2 at 66 (Mine Service Company, Inc.'s Answer); *id.* at 71 (Kentucky Mine Supply Company's Answer). Further, 3M provided no authority to support, and common sense defies acceptance of, the argument that Plaintiffs' failure to engage in discovery is a fact that, in and of itself, negates Plaintiffs' allegations. 3M describes a lack of discovery and absence of demonstrated proof from Plaintiffs. Under the properly restrained test for fraudulent joinder, that is not equivalent to evidence or facts negating the colorable basis for liability against the Supplier Defendants.

6

To support its argument, 3M cites *Hardy v. Ajax Magnathermic Corp.*, 122 F. Supp. 2d 757 (W.D. Ky. 2000) and *Bennett v. Ford Motor Co.*, No. 5:07-CV-115, 2007 WL 4561281 (W.D. Ky. Dec. 21, 2007). In these cases, each court found that defendants were fraudulently joined (albeit in the 28 U.S.C. § 1446(c) "bad faith exception" context) because the court could find no reasonable basis for each of the plaintiff's claims and, in both cases, the plaintiffs made no attempt to develop a case against the respective defendants. *See Hardy*, 122 F. Supp. 2d at 760–61; *Bennett*, 2007 WL 4561281, at *3. However, neither of these cases indicate that the plaintiffs made allegations sufficient to support their claims in the complaint. In *Hardy*, the court noted that the plaintiffs "made no demonstration that their case ha[d] any merit whatsoever." 122 F. Supp. 2d at 761. Here, the allegations in the Complaint—detailing publications that put Supplier Defendants on notice of the Respirators' defects and sufficiently alleging causation—provide the basis for Plaintiffs' claims. It does not follow from *Hardy* and *Bennett,* which implement an analysis perhaps more searching than the *Casias/Walker* rubric, that Plaintiffs must also present factual evidence from discovery to avoid a finding of fraudulent joinder.

3M also argues that *Hoskins v. 3M Company*, 6:17-CV-304-KKC, 2018 WL 1040091 (E.D. Ky. Feb. 23, 2018), first cited by Plaintiffs, *see* DE 17 at 12, supports 3M's position. In *Hoskins*, the plaintiffs claimed, based on interrogatories submitted by the supplier defendants in prior litigation, that the defendants were not covered by the Kentucky Middleman Statute. *See* 2018 WL 1040091, at *2. The court found that this was sufficient for the plaintiffs to "make colorable claims that the [s]upplier [d]efendants 'knew or should have known' that the 3M respirators were 'in a defective condition, unreasonably dangerous to the user or consumer.'" *Id.* at *3 (quoting KY. REV. STAT. § 411.340). 3M claims that the *Hoskins* holding centered on the fact that the plaintiffs' claims were based on evidence (interrogatories), whereas the Plaintiffs in the instant case rely only

7

on Complaint allegations. *See* DE 19 at 9. This is not the case. The *Hoskins* court never specified such. It only rejected 3M's argument that the "evidence [was] too generalized to succeed under the middleman statute" and held that, while it may not be likely that the evidence would convince a jury at trial, there was "at least a colorable basis that a jury could find the [s]upplier [d]efendants[] liable based on the evidence" and that 3M's "argument asks the [c]ourt to go beyond the limited inquiry permitted for assessing fraudulent joinder." 2018 WL 1040091, at *3. So too here, 3M asks the Court to go beyond the proper scope of inquiry.

Further, the issue presented in the instant case closely parallels that in *Adams v. Minnesota Mining & Manufacturing Co*. In that case, the plaintiffs alleged in the complaint "that the retailers/distributors knew or should have known that the respirators were defective and unreasonably dangerous . . . based upon literature contained in scientific and government journals," then listed such literature. 2004 WL 718917, at *3. The court found that this satisfied Plaintiff's burden to "allege some [] specific or special knowledge of dangerousness by the retailer to avoid the protections afforded by KRS 411.340." *Id.; see id.* ("Plaintiffs have alleged facts from which the Court could infer that the retailers/distributors should have been aware of the respirators['] alleged defects."). So too, here, Plaintiffs' allegations in the Complaint are sufficient to clear the fraudulent joinder bar. This is especially true where 3M surfaced only litigation languor or strategy (and as to many plaintiffs still in discovery), not undisputed facts that negate the relevant claims.

Lastly, 3M's claim that a broader pattern or practice by Plaintiffs' attorneys—of joining non-diverse defendants to avoid removal—is evidence of fraudulent joinder also lacks merit. For one, 3M presents no convincing evidence of such a pattern. *See* DE 1 at 16; DE 19 at 12–13. 3M cites only two like cases brought by Plaintiffs' counsel that are currently pending before the Court

8

awaiting resolution. *See Bowen et al. v. 3M Company* (7:22-13-REW); *Castle et al. v. 3M Company* (7:22-14-REW) (including Plaintiff Marcum, as referenced by 3M).

Nor does the case law cited by 3M materially support its position. One case 3M cites, *Kent v. Bank of Am., N.A.*, No. 11-CV-2315, 2012 WL 3582759 (D. Minn. May 31, 2012), does not support (or even address) 3M's argument. *See id.* at *9 (finding that a defendant was fraudulently joined because the plaintiffs' claims against it were based on a flawed legal theory). To be sure, another case 3M cites, *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 220 F. Supp. 2d 414 (E.D. Pa. 2002), did find that fraudulent joinder existed in part because "there [was] a pattern of pharmacies being named in complaints, but never pursued to judgment." *Id.* at 424. However, the primary reason for the fraudulent joinder finding was that "the complaints . . . [we]re devoid of specific allegations against the pharmacies" and were "filled instead with general statements levied against all defendants, which most properly can be read as stating claims against the drug manufacturers." *See id.* at 423–24. In the instant case, by contrast, the Complaint specifically alleges Plaintiffs' theory of liability against Supplier Defendants (via distinct and recognized state-law counts), and those allegations are distinct from the claims against the Manufacturer Defendants. *See* DE 1-2 at 59–62. In the next case 3M cites, *In re Abilify (Aripiprazole) Prods. Liab. Litig.*, No. 3:16md2734, 2018 WL 6258903, at *7 (N. D. Fla. Nov. 8, 2018), the court found that there was no fraudulent joinder in part because there was "no pattern of [] plaintiffs bringing suit against [the defendant] and then failing to follow through with discovery," but it contrasted its finding with another district court case, *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 257 F. Supp. 3d. 717 (E.D. Pa. 2017), where another court found fraudulent joinder because of the *combination* of a "historical pattern of bringing suit . . . but failing to prosecute" and "non-specific allegations in the complaint." *Id.* at *7. None of the

cases cited by 3M forcefully support the argument that a counsel's joinder pattern or practice in prior litigation alone is a proper basis for finding fraudulent joinder.

In *Hoskins*, 3M similarly argued that the court "should find fraudulent joinder" because "[p]laintiffs' counsel have an established pattern of suing [s]upplier [d]efendants, failing to pursue their claims against them, and then dismissing or abandoning those claims after the removal deadline has passed." 2018 WL 1040091, at *4. The court dismissed the argument, finding that "the only standard that the Sixth Circuit has articulated for fraudulent joinder is whether plaintiffs lack a colorable basis for their claims" and that "allegations about plaintiffs' counsels' action in prior litigation says little about whether the claims against the supplier defendants are colorable." *Id.* (alterations adopted). The court next pointed to the same *In re Diet Drugs* case cited by 3M here, *see* DE 19 at 12 n.50, and noted "[t]hat case is readily distinguishable" because of its reliance on the non-specific allegations in the complaint. 2018 WL 1040091, at *4. The court concluded that the fact that "similar claims have failed in prior litigation, or have played a smaller part of the case as a litigation strategy, does not mean a reasonable jury could not find liability against the [s]upplier [d]efendants in these cases." *Id.* The *Hoskins* reasoning applies with full force to the instant case.

In short, the Court rejects 3M's argument that Plaintiffs' counsels' alleged pattern of "naming these same two local mine supply stores without ever pursuing those claims," DE 19 at 13, constitutes fraudulent joinder. Even if the Court were to rely on the law cited by 3M (none of which is binding on, or even persuasive to, this Court), the cases call for additional grounds for a fraudulent joinder finding, such as insufficient complaint allegations. Here, that does not pertain.

3M has not satisfied its heavy burden to demonstrate that Plaintiffs have no "glimmer of hope" to recover against the Kentucky Defendants. *See Christensen*, 24 F. Supp. 3d at 613. Instead,

Plaintiffs have made a cognizable claim about Defendants' liability, both substantively and under the exception to the Kentucky Middleman Statute. The putative knowledge boundary sounds in negligence. A full analysis would involve, among other things, consideration of knowledge over time, access to industry information, and the particular risk implicated with the type of product, here a device designed to assure safe breathing around hazardous work. Whether a Supplier Defendant, selling particular safety equipment, knew or should have known about documented problems or concerns relative to that type of equipment is not a topic the record here resolves on undisputed facts. Likewise, whether these suppliers did or did not sell or supply to Plaintiffs or Plaintiffs' employers is not a fact the record conclusively shows.

The Court need not decide today whether there exists a dispute of material fact for trial but, instead, must only decide whether the allegations in the Complaint, the undisputed record, and the state of Kentucky law are sufficient to create a glimmer of hope that the Plaintiffs could prove Supplier Defendants' liability at trial. There surely is a glimmer of hope—both under Kentucky law and as suggested by the factual allegations included and publications listed in the Complaint—foreclosing a fraudulent joinder finding. The Middleman Statute expressly blesses the theory of supplier liability, and the Complaint allegations dovetail with the immunity exception. Therefore, joinder of Kentucky Mine Supply Company and Mine Service Company was not fraudulent for purposes of jurisdictional analysis.

### III. CONCLUSION

Complete diversity under § 1332 does not exist between the parties because the Kentucky Supplier Defendants were not fraudulently joined to this action. Accordingly, the Court **ORDERS** as follows:

1. The Court **GRANTS** DE 17 and **REMANDS** the case to Pike Circuit Court; and

2. Seeing as the Court does not have original jurisdiction over this action, the Court **DECLINES** to exercise supplemental jurisdiction over the third-party claims. *See* 28 U.S.C. § 1367(a).

This the 28th day of March, 2023.

Signed By:
*Robert E. Wier*
United States District Judge